## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENT JACKSON RHOADES AND | : | |
| RAYMOND JAMES FINANCIAL | : | |
| SERVICES, INC., | : | Case No. 1:23-mc-00115-UNA (CFC) |
| | : | |
| *Movants/Cross-Respondents*, | : | |
| | : | |
| v. | : | |
| | : | |
| WELLS FARGO ADVISORS, LLC, | : | |
| | : | |
| *Respondent/Cross-Petitioner.* | : | |

### RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF CROSS-PETITION AND MOTION TO CONFIRM AND OPPOSITION TO CROSS-RESPONDENTS' MOTION TO VACATE ARBITRATION AWARD

Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors, LLC ("WFA"), by and through its counsel, respectfully submits this Memorandum of Law in support of its Cross-Petition to Confirm and Opposition to Cross-Respondents' Petition and Motion to Vacate an arbitration award (ECF Nos. 1, 3) against Kent Jackson Rhoades ("Rhoades") and Raymond James Financial Services, Inc. ("RJFS") (collectively "Cross-Respondents").

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
John P. DiTomo (# 4850)
Courtney Kurz (#6841)
OF COUNSEL                          1201 N. Market Street
                                    P.O. Box 1347
David G. Hille *(pro hac vice to be* Wilmington, DE  19899-1347
*submitted)*                        (302) 658-9200
Gregory M. Starner *(pro hac vice to* jditomo@morrisnichols.com
*be submitted)*                     ckurz@morrisnichols.com
WHITE & CASE LLP
1221 New York, NY 10036-2787        *Attorneys for Respondent*
(212) 819-8200                      *Wells Fargo Clearing Services, LLC*

April 14, 2023

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ....................................................................1

BACKGROUND ...........................................................................................2

    I.     THE DISPUTE ...................................................................2

    II.    THE ARBITRATION .........................................................4

    III.   ASSIGNMENT OF THE PANEL .......................................4

    IV.   THE HEARING ..................................................................7

LEGAL STANDARD .................................................................................10

ARGUMENT ..............................................................................................11

    I.     THE PETITION DOES NOT ESTABLISH ANY VALID
        BASIS TO VACATE THE AWARD OF
        COMPENSATORY DAMAGES .......................................11

        A.    There is No Basis to Vacate the Compensatory
             Damages Award Under Section 10(a)(4)...................................11

        B.    The Compensatory Damages Award Was Not
             Issued In Manifest Disregard Of The Law ..............................13

        C.    The Compensatory Damages Award Does Not
             Violate Public Policy ...............................................................15

    II.    THE PETITION DOES NOT ESTABLISH ANY VALID
        BASIS TO VACATE THE AWARD OF ATTORNEY
        AND EXPERT FEES ........................................................17

        A.    There Is No Basis to Vacate the Awarded Fees
             Under Section 10(a)(3) .............................................................17

        B.    There Is No Basis to Vacate the Awarded Fees
             Under Section 10(a)(4) .............................................................20

      C.     The Panel Did Not Manifestly Disregard the Law or Violate Public Policy by Awarding Fees .................................... 25

          1.     The Fee Award Was Not Issued In Manifest Disregard Of the Law ..................................................... 25

          2.     The Fee Award Does Not Violate Public Policy ............................................................................. 26

III.    THE ARBITRATOR SELECTION PROCESS DOES NOT SUPPORT VACATUR ................................................ 27

IV.    THE PUNITIVE DAMAGES AWARD WAS PROPER AND SHOULD NOT BE VACATED UNDER THE *FUNCTUS OFFICIO* DOCTRINE ...................................... 28

V.    THE PANEL'S AWARD OF THE $500 FEE FOR FILING THE STATEMENT OF CLAIM IS NOT A BASIS FOR VACATUR ................................................ 29

VI.    THE AWARD SHOULD BE CONFIRMED ................................... 30

VII.   THE COURT SHOULD AWARD COSTS TO WFA ...................... 30

CONCLUSION ....................................................................... 31

<u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Ameriprise Fin. Servs., Inc. v. Brady*,
  325 F. Supp. 3d 219 (D. Mass. 2018) ...........................................................24, 25

*Architectural Res. v. Rakey*,
  912 S.W.2d 676 (Mo. Ct. App. 1995) .............................................................23

*Ario v. Underwriting Members of Syndicate 53 at Lloyds*,
  618 F.3d 277 (3d Cir. 2010) .............................................................11

*Asturiana De Zinc Mktg., Inc. v. LaSalle Rolling Mills, Inc.*,
  20 F. Supp. 2d 670 (S.D.N.Y. 1998) .............................................................24

*Black Box Corp. v. Markham*,
  127 F. App'x 22 (3d Cir. 2005) .............................................................13

*Borgschulte v. Bonnot*,
  285 S.W.3d 345 (Mo. Ct. App. 2009) .............................................................25

*Bradshaw v. Alpha Packaging, Inc.*,
  379 S.W.3d 536 (Ark. 2010) .............................................................16

*Brook v. Peak Int'l, Ltd.*,
  294 F.3d 668 (5th Cir. 2002) .......................................................27, 28

*Caputo v. Wells Fargo Advisors, LLC*,
  2022 U.S. App. LEXIS 12420 (3d Cir. May 9, 2022) ...................................13, 17

*Carter v. Cline*,
  430 S.W.3d 22 (Ark. 2013)...........................................................26

*Coral Grp., Inc. v. Shell Oil Co.*,
  2013 U.S. Dist. LEXIS 113219 (W.D. Mo. Aug. 12, 2013) .............................23

*CPR Mgmt. v. Devon Park Bioventures, L.P.*,
  19 F.4th 236 (3d Cir. 2021) .......................................................19, 27

*Egan Jones Ratings Co. v. Pruette*,
    765 F. App'x 659 (3d Cir. 2019) ....................................................................11

*Env't Energy Partners, Inc. v. Siemens Bldg. Techs., Inc.*,
    178 S.W.3d 691 (Mo. Ct. App. 2005) .........................................................23, 25

*Fitzgerald v. H&R Block Fin. Advisors, Inc.*,
    2008 U.S. Dist. LEXIS 45472 (E.D. Mich. June 11, 2008) ........................14, 25

*Freeman v. Brown Hiller, Inc.*,
    281 S.W.3d 749 (Ark. 2008) ........................................................................17

*Freres v. Solazyme, Inc.*,
    154 F. Supp. 3d 68 (D. Del. 2015)................................................................15

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)........................................................................................18

*Goldman v. Citigroup Global Mkts., Inc.*,
    834 F.3d 242 (3d Cir. 2016) .........................................................................13

*Hall St. Assocs., LLC v. Mattel, Inc.*,
    552 U.S. 576 (2008)................................................................................10, 13

*Highlands Hospital & Health Center v. American Federation of State*
    *County & Municipal Employees, District Council 84*,
    1996 U.S. Dist. LEXIS 22652 (W.D. Pa. Feb. 16, 1996)...........................26, 27

*Inyx, Inc. v. Bartke*,
    2008 WL 4819600 (N.Y. Sup. Ct. Oct. 21, 2008)..........................................19

*Lex v. Weinar*,
    2015 U.S. Dist. LEXIS 41288 (E.D. Pa. March 31, 2015)................................18

*Lucas Stucco & EIFS Design LLC v. Landau*,
    324 S.W.3d 444 (Ark. 2010) ........................................................................21

*MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*,
    411 F. Supp. 3d 316 (D. Del. 2019)...............................................10, 13, 22, 30

*Merrill Lynch v. Whitney*,
    419 F. App'x 826 (10th Cir. 2011) ...............................................................18

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*,
  272 F. App'x 174 (3d Cir. 2008) ........................................................................25

*Oakwood Labs v. Howrey Simon Arnold & White, LLP*,
  2007 U.S. Dist. LEXIS 37909 (N.D. Ohio May 24, 2007) ...............................28

*PMA Cap. Ins. Co. v. Platinum Underwriters Bermuda, Ltd.*,
  400 F. App'x 654 (3d Cir. 2010) ........................................................................22

*Prospect CCMC LLC v. Crozer-Chester Nurses Ass'n/Pa. Ass'n of
  Staff Nurses & Allied Prof'ls*,
  803 F. App'x 564 (3d Cir. 2020) ........................................................................13

*QAD, Inc. v. Block & Co.*,
  2022 U.S. Dist. LEXIS 75409 (D. Del. Apr. 25, 2022) ..............................11, 30

*Sabre GLBL, Inc. v. Shan*,
  779 F. App'x. 843 (3d Cir. 2019) ........................................................................22

*Sapp v. Indus. Action Servs., LLC*,
  2022 U.S. Dist. LEXIS 94571 (D. Del. May 26, 2022) .....................................28

*Serv. Emps. Int'l Union Local 36 v. City Cleaning Co.*,
  982 F.2d 89 (3d Cir. 1992) .................................................................................16

*Smith v. Am. Greetings Corp.*,
  804 S.W.2d 693 (Ark. 1991) ..............................................................................16

*Stifel Nicolaus, Co. v. Forster*,
  2015 U.S. Dist. LEXIS 14970 (S.D.N.Y. Feb. 6, 2015) ....................................18

*Stubblefield v. Siloam Springs Newspapers, Inc.*,
  590 F. Supp. 1032 (W.D. Ark. 1984) .................................................................16

*Sutter v. Oxford Health Plans LLC*,
  675 F.3d 215 (3d Cir. 2012) ...............................................................................11

*United Paperworkers Int'l Union v. Misco, Inc.*,
  484 U.S. 29 (1987)..............................................................................................17

*Verizon Pa., LLC v. Commc'ns Workers of Am., AFL-CIO, Local
  13000*, 13 F.4th 300 (3d Cir. 2021) ..................................................................12

*W. Blue Print Co., LLC v. Roberts*,
  367 S.W.3d 7 (Mo. 2012) ...................................................................23

*Wal-Mart Stores, Inc. v. Cuker Interactive*,
  2018 U.S. Dist. LEXIS 55242 (W.D. Ark. Mar. 31, 2018) ...............23

*Whitehead v. Pullman Grp., LLC*,
  811 F.3d 116 (3d Cir. 2016) ............................................................13

**Other Authorities**

Press Release, Raymond James Financial Reports Fiscal Fourth
  Quarter and Fiscal 2022 Results (Oct. 26, 2022),
  https://www.raymondjames.com/-/media/rj/dotcom/files/our-
  company/news-and-media/2022-press-releases/rjf202210264q-
  earnings.pdf...................................................................................29

*Stephens, Inc. v. Benjamin F. Edwards & Co., Inc., et al.*
  FINRA No. 17-02378 (2022). ..........................................................17

**Rules and Statutes**

9 U.S.C. § 10 .........................................................................................10

Ark. Code Ann. § 16-22-308 ................................................................21

FINRA Rule 12100(w).............................................................................4

FINRA Rule 12604 ................................................................................18

FINRA Rule 12904 ................................................................................14

FINRA Rule 13904(e)(8)........................................................................29

FINRA Rules 13200................................................................................4

## **PRELIMINARY STATEMENT**

The underlying arbitration and award arose from Cross-Respondents' raid on WFA's branch office in Mountain Home, Arkansas (the "Mountain Home Branch"), which culminated in the departure of the entire branch to join WFA's competitor, RJFS.

WFA initiated the underlying FINRA Arbitration on August 25, 2020, asserting claims for unfair competition, breach of contract and fiduciary duty, aiding and abetting, conspiracy, tortious interference, violation of the FINRA Rules of Conduct, and unjust enrichment.  After nearly three years of proceedings, including extensive briefing and 21 days of hearings, the Panel issued an award on February 2, 2023, finding, among other things, (i) RJFS and Rhoades jointly and severally liable for $15.3 million in compensatory damages, (ii) RJFS liable for $1 million in punitive damages, and (iii) Rhoades liable for $4.4 million in attorney and expert fees (the "Award").

Unhappy with the result of the arbitration and seeking a do-over, on February 23, 2023, Cross-Respondents filed their Petition and Motion to Vacate the Award, rehashing arguments from the Arbitration and falling far short of satisfying the extremely high bar for vacatur.

In challenging the Panel's award of compensatory damages, Cross-Respondents seek to recycle the same arguments they made during the Arbitration,

which is impermissible on review of an award.  In any case, the damages award is more than sufficiently supported by the law and the evidence.

Cross-Respondents also take aim at the Panel's award of WFA's attorney and expert fees and costs, but applicable Arkansas law and agreements between Rhoades and WFA provided ample basis for those fees, and the Panel's determination was certainly not so "irrational" or "egregious" to warrant vacatur. Cross-Respondents' attempt to reargue the legal basis for the fee award and their contention that the Panel "refused" to consider evidence of WFA's fees are also without merit.  WFA submitted its requested fees in a post-hearing submission as agreed by the parties and in accordance with the directions of the Panel.

Cross-Respondents' other arguments are similarly baseless.  There was no issue with the disqualification of an arbitrator early in the case, and the Panel was well within its authority to correct the error in the punitive damages figure listed in the Award within hours of its initial issuance.

## BACKGROUND

### I.  THE DISPUTE

The Parties' dispute arose from RJFS' and Rhoades' orchestration of a raid on WFA's branch office in Mountain Home, Arkansas (the "Mountain Home Branch"), which WFA and its predecessors had maintained for decades.  ECF No. 4-15 at 1–6; ECF No. 4-45 at 1–4.  The raid culminated in the October 1, 2018

departure of all twelve Mountain Home Branch employees, including six financial advisors (referred to as the "Former Employees"), to join RJFS, and necessitated the closure of WFA's Mountain Home Branch.  ECF No. 4-15 at 1–2; ECF No. 4-45 at 1.

The Former Employees, and especially Rhoades as the branch manager, had fiduciary, common law, and contractual duties that prohibited them from colluding and soliciting other WFA employees, while still employed at WFA, to move as a group from WFA to a competitor.  ECF No. 4-45 at 2; ECF No. 4-15 at Ex. J.

Rhoades and RJFS knew that lifting out the entire Mountain Home Branch was "likely" to result in a raiding case and made bad faith attempts to minimize that risk.  *See, e.g.*, Ex. 8 at 33 (Rhoades acknowledging in a text to RJFS that "raiding litigation" was "likely"); *id.* at 52; Ex. 11 at  1399:21–1400:11 (Rhoades testifying that he forwarded RJFS multiple internal WFA email exchanges to keep RJFS "in the loop"); Ex. 10 at 1267:21–1269:20  (Rhoades testifying that RJFS wanted to speak "offline" in early 2018 because they were talking about moving the entire branch or "mega-team"); *id.* at 1344:25–1345:13 (Rhoades testifying that he discussed with RJFS how they could "minimize the litigation risk").  With a full understanding of the legal risks, they went forward with the raid anyway.  ECF No. 4-45 at 31.

## II.   THE ARBITRATION

On August 25, 2020, WFA initiated the Arbitration.  ECF No. 4-15. WFA requested compensatory damages, "the costs and disbursements" of the action, attorney and expert fees and costs, and "such other and further relief as the Panel may deem just and proper."  *Id.* at 36.

The Former Employees were subject to FINRA's jurisdiction via their Forms U-4 and as FINRA "Associated Persons," and RJFS was subject to FINRA's jurisdiction as a member firm.  *See* FINRA Rules 13200, 12100(w).

Cross-Respondents also executed agreements submitting to FINRA's jurisdiction in this particular dispute, and "agree[ing] to be bound" by FINRA "procedures and rules" and "to abide by and perform any award(s) rendered pursuant" to the Arbitration.  Ex. 2 at 1.

Cross-Respondents filed their answer denying WFA's claims and asserting a Counterclaim on behalf of the Former Employees on November 4, 2020. ECF No. 4-7.  WFA filed its answer denying the counterclaim on December 1, 2020. Ex. 3.

## III.   ASSIGNMENT OF THE PANEL

After the assignment of the arbitration panel (the "Panel") but several months before the hearing was to begin, WFA discovered that the public arbitrator, James Parker, had tweeted a number of racially charged comments after his

appointment to the Panel.  Concerned by the bias reflected in Mr. Parker's Tweets, on July 2, 2021, WFA filed a motion requesting his removal from the Panel.  ECF No. 4-31.  Cross-Respondents opposed WFA's motion, and WFA filed a reply.  ECF No. 4-32; ECF No. 4-31.

On July 20, 2021, FINRA notified the Parties that the motion was "moot" because Mr. Parker was "no longer serving on the Panel."  ECF No. 4-34. Three days later, FINRA appointed the next highest-ranked public arbitrator from the parties' combined list, Julie Miller, as Mr. Parker's replacement.  ECF No. 4-35. Respondents did not question or object to this.

On October 1, 2021, WFA filed a Pre-Hearing Brief summarizing its claims and their legal and factual basis, and reiterating its request for attorneys' fees and costs.  ECF No. 4-45 at 1, 21–22, 51–52.

On March 15, 2022, nearly eight months after Arbitrator Parker's removal and Arbitrator Miller's appointment, and less than two weeks before the hearing (which the Former Employees had postponed from its original start date), the Former Employees wrote to the FINRA Director and President expressing concerns about Mr. Parker's removal.  ECF No. 4-37.  The Former Employees filed a motion to the Panel on March 22, 2022, seeking to postpone the hearing (which was scheduled to begin on March 28) until FINRA responded to their letter.  ECF No. 4-39 at 3–4.  RJFS did not join the request for postponement.

On March 22, 2022, the FINRA Director responded and explained that Mr. Parker had been "disqualified from service on the panel" thus rendering WFA's motion to remove him moot, and that Arbitrator Miller's appointment "was in accordance with the Code of Arbitration Procedure for Industry Disputes" and with FINRA's "policies and procedures regarding the arbitrator selection process."  ECF No. 4-38 at 2.  Specifically, the Director explained that according to FINRA's Neutral List Selection System algorithm, Arbitrator Miller was the next-highest ranked arbitrator on the parties' combined list.  *Id.*  The Director also explained that "FINRA does not disclose to parties the reasons for arbitrator disqualifications and based on that policy, which is consistently applied in all cases," the Director was "unable to provide additional information regarding the circumstances" of Mr. Parker's removal.  *Id.*

On March 24, 2022, the Former Employees sent another letter to the FINRA Director and President seeking again to postpone the hearing, claiming that the Director's response raised "more questions than it answer[ed]" and requesting a more "fulsome response" from the Director.  ECF No. 4-40 at 2, 6 (Former Employees' March 24, 2022 Letter Response to the FINRA Director).  The FINRA Director denied the postponement request on March 28 and the hearing commenced the next day.  ECF No. 4-41.

The FINRA Director provided a further response to the Former Employees on April 18, after the hearing had commenced, again confirming that Mr. Parker's removal and Arbitrator Miller's appointment to the Panel were "consistent with FINRA's rules and procedures" and "conducted in a neutral, efficient, and fair manner."  Ex. 6 at 2.

### IV.   __THE HEARING__

The merits hearing began on March 29, 2022 and continued on March 30-31, April 1, April 20-21, May 9-10, June 21-22, August 22, August 24-26, November 9, December 19-20, and January 3-6, 2023.

On the first day of the hearing, the parties confirmed their consent to the composition of the Panel.  *See* Ex. 9 at 29:14–30:8.

During opening statements, WFA repeated its requests for compensatory damages and punitive damages as well as attorneys' fees and costs. *See id.* at 72:2–12.

During the hearing, WFA presented extensive evidence related to its damages, including testimony by its damages expert, Charles Lundelius ("Mr. Lundelius").  *See* Ex. 12 (WFA's expert's demonstrative exhibit from the Arbitration summarizing his analysis of WFA's damages, including his damages calculations in the range of $12.9 million to $22.5 million); Ex. 16 at 4620:15–4625:5 (WFA's

counsel's summation of the evidence supporting WFA's requested compensatory damages in closing argument).

The impact of the Protocol for Broker Recruiting (the "Protocol") on WFA's claims was also addressed at length.  WFA's counsel argued throughout the hearing that the Protocol did not preclude WFA's claims.  *See, e.g.*, *id.* at 4543:11–18; 4604:23–4606:23.  Even Respondents' own expert testified that the Protocol "does not bar or otherwise affect the ability of the prior firm to bring an action against the new firm for raiding."  *Id.* at 4352:23–4354:10; 4367:16–21.  WFA's expert also testified that the Protocol "does not apply if there is a raiding situation." Ex. 13 at 2463:11–2464:3.

The parties and the Panel discussed WFA's submission of its attorneys' fees and costs on numerous occasions.  At the close of WFA's case in chief and during closing arguments, WFA reminded the Panel and Respondents that WFA intended to submit its application for attorneys' fees and costs at the close of the proceedings.  *See* Ex. 14 at 3068:19–24; Ex. 16 at 4620:15–4625:5; 4626:10–25.  At no point did Respondents object to this or request any particular procedure for the submission of evidence to support WFA's request for fees and costs.

At the close of WFA's case in chief, WFA alerted the Panel and the parties that it intended to withdraw its claims against all of the Respondent Employees apart from Rhoades.  *See* Ex. 14 at 3068:5–17.

At the end of the hearing, the Panel requested that WFA and the Cross-Respondents each file post-hearing submissions providing the legal bases for their claims, including for attorneys' fees and costs.  *See* Ex. 16 at 4770:11–4771:10. Respondents did not object or request any other process regarding WFA's request for attorneys' fees and costs.

At closing, WFA summarized the evidence supporting its request for compensatory damages in the range of $13 million to $22.7 million, punitive damages, and attorneys' fees and reiterated that it would submit the quantum of its fees along with the post-hearing submission the Panel ordered the parties to file.  *Id.* at 4620:15–4625:5; 4626:10–25.  Cross-Respondents' counsel argued in closing that WFA's basis for attorneys' fees "is simply wrong and inaccurate," but did not object to the procedure for WFA to submit its attorneys' fees and costs in its post-hearing submission.  *Id.* at 4735:1–9.

Two weeks after the hearing's conclusion, on January 24, 2023, the Parties submitted their post-hearing submissions as directed by the Panel.  ECF Nos. 4-47, 4-48.  WFA's submission included a "Statement of Fees and Costs" attested to by its counsel, declaring that WFA had incurred $3,500,000 in attorney fees and $847,000 in expert fees.  ECF No. 4-47 at 26-27.  The Panel did not request any additional information regarding WFA's claim for attorneys' fees.

On ample notice that WFA would submit its Statement of Fees and Costs in its Post-Hearing Submission, Cross-Respondents in their Post-Hearing Submission reserved their right to "object to, review and rebut" WFA's requested fees and costs.  ECF No. 4-48 at 12 n.2.  However, Cross-Respondents then elected not to submit any objection to the Panel or otherwise respond to WFA's Statement of Fees and Costs.

On February 2, 2023, the Panel issued an award (the "Initial Award"). ECF No. 4-1.  Hours later, the Panel issued an "Amended Award" (ECF No. 4-2) "solely to correct the amount of punitive damages against Raymond James to the sum of $1,000,000.00" from the typographical error of $1,000 mistakenly listed in the Initial Award.  Award at 4.  Other than that change, the Award is identical to the Initial Award.

Instead of complying with the Award, on February 23, 2023, Cross-Respondents filed a Petition and Motion to Vacate.  ECF Nos. 1-3.

## **LEGAL STANDARD**

A party seeking vacatur of an arbitral award must establish that one of the statutory grounds in 9 U.S.C. § 10 applies.  *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).  There is a strong presumption in favor of enforcing arbitration awards under the FAA, and a party seeking vacatur "bears a heavy burden." *MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*, 411 F. Supp. 3d 316, 326

(D. Del. 2019) (noting that courts afford "exceptional deference" to arbitration awards). An arbitrator's reasoning for an award need not be explained, and must be confirmed unless it is "completely irrational" and has "absolutely no support at all in the record." *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 295–96 (3d Cir. 2010); *see also Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012).

## ARGUMENT

### I.   THE PETITION DOES NOT ESTABLISH ANY VALID BASIS TO VACATE THE AWARD OF COMPENSATORY DAMAGES

#### A.   There is No Basis to Vacate the Compensatory Damages Award Under Section 10(a)(4)

In seeking to vacate the $15.3 million compensatory damages award, Cross-Respondents merely rehash arguments they made unsuccessfully in the Arbitration. Courts only find that arbitrators exceeded their powers under Section 10(a)(4) if the award "cannot be rationally derived" from the record or if the award's terms "are completely irrational." *Sutter*, 675 F.3d at 219–20. Courts may not "reexamine the evidence" and even "serious" legal or fact-finding errors "do not justify reversal." *Egan Jones Ratings Co. v. Pruette*, 765 F. App'x 659, 662 (3d Cir. 2019); *QAD, Inc. v. Block & Co.*, 2022 U.S. Dist. LEXIS 75409, at *8 (D. Del. Apr. 25, 2022).

Cross-Respondents assert the damages award is irrational because it does not account for Rhoades' percentage of total branch revenue. Mot. at 16. However, the parties presented extensive arguments and evidence on this issue during the Arbitration,[1] showing RJFS' and Rhoades' coordination of the departure of the entire Mountain Home Branch from WFA, and the damages awarded fall within the range of damages presented by WFA's expert.[2]

Cross-Respondents' contention that the Award leads to the "irrational result" that Rhoades is "penalized" for changing jobs also seeks to reargue the merits of the Arbitration. Mot. at 16–17. While an "irrational result" is not a basis to vacate in any event (*see Verizon Pa., LLC v. Commc'ns Workers of Am., AFL-CIO, Local 13000*, 13 F.4th 300, 306 (3d Cir. 2021)), Rhoades was of course free to depart WFA. But he was not free to breach his contractual and fiduciary duties by coordinating the departure of the entire branch office that he was charged with managing to join a WFA competitor.

---

[1]  *See, e.g.*, ECF No. 4-45 at 48–49 (WFA presenting the legal basis for compensatory damages in its Pre-Hearing Brief); Ex. 16 at 4620:15–4625:5 (WFA's counsel summarizing the evidence supporting an award of compensatory damages in closing); *Id.* at 4625:10–4626:14 (WFA's counsel providing examples of similar FINRA cases awarding similar amounts in compensatory damages in closing).

[2]  *See, e.g.*, Ex. 12 at 23 (WFA's expert estimating WFA's range of damages in the range of $12.9MM and $22.5MM).

**B.    The Compensatory Damages Award Was Not Issued In Manifest Disregard Of The Law**

Cross-Respondents' claims that the Panel manifestly disregarded the law because the Award "ignores the Protocol" and "disregard[s] WFA's own expert's calculations" are similarly meritless.  Mot. at 17.

In order to warrant vacatur under the manifest disregard standard, an award "must fly in the face of clearly established legal precedent," such as where an arbitrator "appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it."  *Caputo v. Wells Fargo Advisors, LLC*, 2022 U.S. App. LEXIS 12420, at *8 (3d Cir. May 9, 2022); *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 121 (3d Cir. 2016).[3]  This standard is "extremely deferential" and "requires more than legal error."  *Caputo*, 2022 U.S. App. LEXIS 12420, at *7–8; *Whitehead*, 811 F.3d at 121; *Black Box Corp. v. Markham*, 127 F. App'x 22, 25 (3d Cir. 2005) (manifest disregard "is to be used only in those

---

[3]    As Cross-Respondents acknowledge, the viability of the common law standards for vacating an arbitration award has been "thrown into doubt" after the Supreme Court's holding in *Hall Street Associates, L.L.C. v. Mattel, Inc.* that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."  *Goldman v. Citigroup Global Mkts., Inc.*, 834 F.3d 242, 256 n.13 (3d Cir. 2016); *see also Markdutcho 1 B.V*, 411 F. Supp. 3d at 326; *Prospect CCMC LLC v. Crozer-Chester Nurses Ass'n/Pa. Ass'n of Staff Nurses & Allied Prof'ls*, 803 F. App'x 564, 568 (3d Cir. 2020) (noting that the manifest disregard grounds for vacating an award "rests on uncertain legal footing" after *Hall Street*).

exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent").  When arbitrators do not issue a reasoned decision,[4] a party seeking vacatur faces a nearly "insurmountable" task of demonstrating manifest disregard.  *Fitzgerald v. H&R Block Fin. Advisors, Inc.*, 2008 U.S. Dist. LEXIS 45472, at *11 (E.D. Mich. June 11, 2008).

The parties presented extensive evidence regarding the Protocol's applicability,[5] and the Panel concluded that the Protocol did not preclude WFA's claims.  As Cross-Respondents' own expert agreed, "the [P]rotocol does not bar or otherwise affect the ability of the prior firm to bring an action against the new firm for raiding."  Ex. 15 at 4367:16–21.  The Protocol also did not preclude WFA from asserting claims against Rhoades for violation of his contractual, fiduciary, and other duties in the period leading up to the departures.[6]

---

[4]     Because the Parties in the Arbitration did not request an explained award, the Panel did not issue one.  *See* FINRA Rule 12904 (providing that FINRA arbitrators need only provide an explained award upon joint request by all parties).

[5]     *See, e.g.*, ECF No. 4-45 at 45–46 (WFA arguing in its Pre-Hearing Brief that the Protocol does not protect Cross-Respondents' actions); Ex. 16 at 4604:23– 4606:23 (counsel for WFA stating in closing arguments that the Panel has "heard about the Protocol throughout [the] case"); *id.* at 4352:23–4354:10 (Cross-Respondents' expert testifying as to his "understanding of the Protocol").

[6]     *See* ECF No. 4-45 at 46 (WFA stating in its Pre-Hearing Brief that Rhoades and RJFS "cannot claim any protections under the Protocol where they have

(Continued . . .)

Cross-Respondents' further claim that the Panel "disregarded" WFA's expert's damages calculations (Mot. at 17) is equally baseless. While the Award is unreasoned, and Cross-Respondents therefore cannot demonstrate the Panel "disregarded" anything, the Panel heard damages testimony from Cross-Respondents' and WFA's experts before awarding damages *within the range recommended by WFA's expert*. WFA's expert provided a compensatory damages range of $12,900,000 to $22,500,000 and the Panel awarded compensatory damages of $15,300,000.

### C. The Compensatory Damages Award Does Not Violate Public Policy

Cross-Respondents also argue that the compensatory damages award subjected the Former Employees to a *de facto* non-compete obligation, violating a purported Arkansas public policy in favor of competition and at-will employment. Mot. at 15–16. As an initial matter, this is not an established basis to vacate a commercial arbitration award in the Third Circuit. *See Freres v. Solazyme, Inc.*, 154 F. Supp. 3d 68, 78 (D. Del. 2015) (noting that no case law directly supports the proposition that a commercial arbitration award may be vacated on public policy grounds). Even if applicable, this is yet another attempt to reargue issues from the

---

not honored its terms"); *id.* at 6–7 (WFA explaining in its Pre-Hearing Brief that the Handbook codified Rhoades' duty of loyalty to WFA).

Arbitration. In any event, Cross-Respondents have not demonstrated how the damages award violates any "explicit, well-defined and dominant" public policy, (*Serv. Emps. Int'l Union Local 36 v. City Cleaning Co.*, 982 F.2d 89, 92 (3d Cir. 1992)), or how this supposed public policy could trump WFA's right to recover damages for Cross-Respondents' misconduct.[7]

The Award does not interfere with the Former Employees' continued employment at RJFS, nor does the Award state that the Former Employees were prohibited from terminating their employment with WFA. Instead, the Award compensates WFA for its losses resulting from Cross-Respondents' misconduct in raiding the Mountain Home Branch. Award at 3–4. Any supposed public policy in favor of competition and at-will employment cannot preclude a party from recovering for losses caused by their former employees' breaches of duties. *See, e.g.*, *Bradshaw v. Alpha Packaging, Inc.*, 379 S.W.3d 536, 537 (Ark. 2010);

---

[7]    Neither of the cases Cross-Respondents cite support their argument. *See* Mot. at 16 (citing *Smith v. Am. Greetings Corp.*, 804 S.W.2d 693, 694–95 (Ark. 1991) (finding that an employer had the right to fire an at-will employee after an alleged dispute with a supervisor)); *Stubblefield v. Siloam Springs Newspapers, Inc.*, 590 F. Supp. 1032, 1036–37 (W.D. Ark. 1984) (ruling that a non-competition agreement prohibiting the plaintiff from competing with the defendant for a 10-year duration across a "broad" geographic area was unreasonable)). The *Stubblefield* court noted that the restrictive covenants' applicability "depends on individual facts and circumstances" rather than a per se policy against such covenants. 590 F. Supp. at 1035.

*Freeman v. Brown Hiller, Inc.*, 281 S.W.3d 749, 756 (Ark. 2008); Ex. 4 (*Stephens, Inc. v. Benjamin F. Edwards & Co., Inc., et al.*, FINRA No. 17-02378 (2022)).

## II.   THE PETITION DOES NOT ESTABLISH ANY VALID BASIS TO VACATE THE AWARD OF ATTORNEY AND EXPERT FEES

### A.   There Is No Basis to Vacate the Awarded Fees Under Section 10(a)(3)

Cross-Respondents' assertion that the Panel "refus[ed]" to hear evidence regarding the basis for fees (Mot. at 3) ignores both the record and the applicable legal standards.

The standard under Section 10(a)(3) is "extremely deferential," (*Caputo*, 2022 U.S. App. LEXIS 12420, at *10), and an arbitrator's refusal to hear evidence only supports vacatur if it was "in bad faith or so gross as to amount to affirmative misconduct." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987).

Here, the Panel did not "refuse" to consider any evidence regarding WFA's fees. The Panel directed the parties to make post-hearing submissions regarding the basis for their claims, including the fees WFA sought (Ex. 16 at 4770:10–4771:10). As Cross-Respondents concede, the Panel considered those submissions. Mot. at 4. It was also understood that WFA would submit the amount of fees requested in its Post-Hearing Submission. Ex. 14 at 3068:19–24. Cross-Respondents never objected to this procedure, nor was there any basis to, as it was

- 17 -

well within the Panel's authority to accept such evidence in a written post-hearing submission.[8] *See* Ex. 7 (FINRA ARBITRATOR'S GUIDE) at 71; FINRA Rule 12604.

Cross-Respondents really argue that the Panel considered insufficient evidence, not that it refused to hear evidence.  Of course, that is not a basis for vacatur.  *See Stifel Nicolaus, Co. v. Forster*, 2015 U.S. Dist. LEXIS 14970, at *19 (S.D.N.Y. Feb. 6, 2015) (noting that insufficient evidence "is not a proper or adequate ground" for vacatur).  FINRA arbitrators are not bound by federal or state rules of evidence; instead, the "FINRA rules empower arbitrators to decide what evidence to admit." *Lex v. Weinar*, 2015 U.S. Dist. LEXIS 41288, at *10 (E.D. Pa. March 31, 2015); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (noting that NYSE arbitrators "are not bound by the rules of evidence").  It was entirely appropriate for the Panel to accept and consider WFA's attorney's attestation as to the amount of fees WFA sought to recover.  *See* Ex. 7 (FINRA ARBITRATOR'S GUIDE) at 71 ("If the panel determines that a party has a right to recovery [of attorneys' fees], that party must prove the amount to the satisfaction of the panel."); *Merrill Lynch v. Whitney*, 419 F. App'x 826, 836–37 (10th Cir. 2011)

---

[8]   The submission of a party's fee application after the conclusion of a hearing is typical and entirely appropriate.  Indeed, it is only after a hearing is complete that a party is able to determine the total amount of attorneys' fees it has incurred.

(refusing to vacate a FINRA fee award where no itemized evidence or hourly rates were provided to support the requested fees).

Cross-Respondents' only purported legal support on this point is inapposite. *See* Mot. at 4–5 (citing *Inyx, Inc. v. Bartke*, 2008 WL 4819600 (N.Y. Sup. Ct. Oct. 21, 2008)). The prevailing party in *Inyx* failed to provide an itemized statement of his fees during the hearing as agreed, and instead submitted evidence after the hearing without notice to the opposing party. *Id*. at 2–3. Here, the parties and the Panel understood that WFA would submit its fees at the close of the proceedings. Additionally, unlike here, the party seeking vacatur in *Inyx* objected to the late fee submission and applied to modify the award, but the arbitrator expressly refused to consider the objections. Mot. at 3. Here, Cross-Respondents filed their own post-hearing submission challenging the legal basis for WFA's fee request and could have requested to file further submissions but did not.

Cross-Respondents' belated attempt to challenge the quantum of WFA's fees is also not a basis for vacatur. It is well established that a party cannot seek vacatur on grounds there were not raised in the arbitration. *See CPR Mgmt. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 247 (3d Cir. 2021). While Cross-Respondents reserved their rights in their post-hearing submission to "object to, review, and rebut" the amount of WFA's fees (ECF No. 4-48 at 12 n.2), they did not pursue any such objection either in the nine days between their reservation of their

right to do so and the issuance of the Panel's Award or any time after.  Accordingly, the Panel never "refused" to consider evidence of WFA's fees, and Cross-Respondents cannot seek vacatur based on new objections to WFA's fees.

### B. There Is No Basis to Vacate the Awarded Fees Under Section 10(a)(4)

Cross-Respondents' contention that the Panel exceeded its authority in awarding fees also misses the mark.  Mot. at 6–12.

WFA asserted breach of contract claims against Rhoades (i) for breaching certain duties to WFA as codified in the WFA Handbook (the "Handbook") and (ii) for breaching non-solicitation covenants in a promissory note (the "Promissory Note", ECF No. 4-50) and a succession agreement (the "Succession Agreement", ECF No. 4-51, with the Promissory Note, the "Contracts", collectively with the Handbook, the "Agreements") by soliciting and colluding with the Former Employees to join RJFS as a group.  *See, e.g.*, ECF No. 4-47 at 3–4.[9] WFA presented ample evidence demonstrating Rhoades' breach of the Agreements.[10]

---

[9]   The Contracts are governed by Missouri law, while the breach claim associated with the Handbook is governed by Arkansas law.  ECF Nos. 4-50 at 6, 4-51 at 9.

[10]   *See, e.g.*, ECF No. 4-45 at 27–35 (WFA asserting in its Pre-Hearing Brief that Rhoades and the Former Employees breached their Agreements and duties); ECF No. 4-47 at 3–5 (WFA arguing in its Post-Hearing Brief that Rhoades breached the Agreements).

Under Arkansas law, the prevailing party in a contract dispute may recover its fees. *See* Award at 4 (citing Ark. Code Ann. § 16-22-308 (providing that "in a civil action to recover on . . . breach of contract . . . the prevailing party "may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs") and *Lucas Stucco & EIFS Design LLC v. Landau*, 324 S.W.3d 444 (Ark. 2010) (recognizing that a party may recover attorneys' fees as provided by statute)). Here, the Panel evaluated the evidence against the applicable law and determined that an award of fees was appropriate. It was well within its discretion to do so.

Cross-Respondents do not dispute that the Parties agreed to arbitrate these claims or that the Panel was empowered to award fees. *See* Ex. 7 (FINRA ARBITRATOR'S GUIDE) at 71 (allowing fee awards where a contractual or statutory basis exists). Nor do Cross-Respondents dispute that the fee award has both contractual and statutory bases. Mot. at 7. Rather they simply seek to reargue the merits and dispute the Panel's finding that those contractual and statutory bases were met here. Mot. at 6–12. This is not a basis for vacatur.

*First*, Cross-Respondents assert that employee handbooks are not contracts. Mot. at 7 n.2. But WFA presented ample evidence to the Panel that employee handbooks can be contracts under Arkansas law.[11]

---

[11]    *See, e.g.*, ECF No. 4-47 at 4–5 (WFA arguing in its Post-Hearing Brief that under Arkansas law, the Handbook is a contract, which Rhoades breached).

*Second*, Cross-Respondents recycle their arguments from the Arbitration that the Protocol superseded the Contracts' non-solicitation provisions (Mot. at 7–8), but the Panel clearly rejected that argument and properly found that the Protocol did not preclude WFA's claims against Cross-Respondents.[12]

*Third*, Cross-Respondents also argue, as they did in the Arbitration, that the Contracts "provided no basis for liability, let alone an attorneys' fee award" (Mot. at 6–7), but the Panel apparently rejected that position.[13]  In any event, the Panel did not solely award fees based on the terms of the Contracts, as Arkansas law also entitled WFA to fees as the prevailing party in a contract case.  This finding is entitled to "exceptional deference."  *Markdutchco 1 B.V.*, 411 F. Supp. 3d at 326; *see also Sabre GLBL, Inc. v. Shan*, 779 F. App'x. 843, 858–59 (3d Cir. 2019)

---

[12]   *See, e.g.*, ECF No. 4-45 at 45–46 (WFA arguing in its Pre-Hearing Brief that the Protocol "expressly provides that it does not excuse raiding or bar claims for raiding"); Ex. 13 at 2463:11–2464:3 (WFA's expert testifying that the Protocol "does not apply if there is a raiding situation"); *see also* Ex. 8 at 72–73.

[13]   *See, e.g.*, ECF Nos. 4-45 at 27–31, 4-47 at 3–5 (WFA arguing in its Pre-Hearing and Post-Hearing Briefs that Rhoades breached the Contracts). Cross-Respondents cite *PMA Cap. Ins. Co. v. Platinum Underwriters Bermuda, Ltd.* for their argument that "the Panel effectively rewrote [the Contracts]" (Mot. at 6–7) but the court in that case vacated an award because the arbitrator expressly stated that material provisions of the underlying contract would be "removed," which did not occur here.  400 F. App'x 654, 655 (3d Cir. 2010).

(reversing vacatur of a fee award even where the parties' arbitration agreement expressly stated that the parties "shall bear their own attorneys' fees").

*Fourth*, Cross-Respondents' argument that the fee award lacks a legal basis because the Agreements' terms and governing law only provide for fees incurred in enforcing those Agreements (Mot. at 8–9) also fails.  Under both Arkansas and Missouri law, WFA was entitled to recover all its fees because WFA's contract claims were intertwined with all of WFA's other claims.  *See Coral Grp., Inc. v. Shell Oil Co.*, 2013 U.S. Dist. LEXIS 113219, at *12 n.3 (W.D. Mo. Aug. 12, 2013) (awarding fees incurred in litigating tort and contract claims because they were "inextricably intertwined"); *see also Wal-Mart Stores, Inc. v. Cuker Interactive,* 2018 U.S. Dist. LEXIS 55242, at *49–53 (W.D. Ark. Mar. 31, 2018).[14]

---

[14] The Missouri cases Cross-Respondents cite are easily distinguished as they involved distinct acts resulting in distinct injuries supporting different claims, whereas here the misconduct and injury was the same for the contract and non-contract claims.  Mot. at 9 (citing *Env't Energy Partners, Inc. v. Siemens Bldg. Techs., Inc.*, 178 S.W.3d 691, 711 (Mo. Ct. App. 2005); *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7 (Mo. 2012)).  Missouri courts can and do find that the prevailing party should be awarded the aggregate amount of fees when the fees cannot be segregated between claims.  *See, e.g.*, *Architectural Res. v. Rakey*, 912 S.W.2d 676, 681 (Mo. Ct. App. 1995) (affirming an award of aggregate attorney fees for work performed litigating multiple claims including a breach of contract claim and a negligence claim because the fees "were largely incurred in preparing and presenting evidence that was common to all disputes").

Here, WFA's contract claims were inextricably linked with WFA's other claims, all of which arose from Rhoades' and RJFS' raid of WFA's Mountain Home Branch.[15]

*Fifth*, Cross-Respondents' argument that the fee award must be vacated because Rhoades was ordered to pay it is also without merit.  Mot. at 11.  The Panel reasonably determined that Rhoades was liable for WFA's fees, where Rhoades was at the center of the raid.[16]

---

[15]   *See, e.g.*, Ex. 8 at 87–88 (WFA's summary in its closing slide presentation of Rhoades' wrongdoings giving rise to liability on *all* of WFA's claims); ECF No. 4-47 at 3–5, 10 (WFA arguing in its Post-Hearing Brief that Rhoades breached the Agreements).  Cross-Respondents also note that WFA's expert did not consider damages for breach of contract by Rhoades and only calculated damages for "raiding."  Mot. at 10.  But the "raiding" claim was underpinned by WFA's various causes of action both in contract and tort.  WFA presented and sought damages that were equally recoverable under its contract and tort claims.

[16]   Cross-Respondents cite to *Asturiana De Zinc Mktg., Inc. v. LaSalle Rolling Mills, Inc.*, 20 F. Supp. 2d 670, 674–75 (S.D.N.Y. 1998) (Mot. at 11), but there was no contractual basis for fees in that case.  Cross-Respondents' reliance on *Ameriprise Fin. Servs., Inc. v. Brady*, 325 F. Supp. 3d 219, 231 (D. Mass. 2018) is similarly misplaced.  Unlike in *Ameriprise* where a panel awarded attorneys' fees in an employer-employee arbitration pursuant to a statute that did not authorize fee awards for such disputes, the Panel here supported its fee award by citing to a statute that clearly allows the prevailing party to recover attorneys' fees.  Award at 10.

### C.   The Panel Did Not Manifestly Disregard the Law or Violate Public Policy by Awarding Fees

#### 1.   The Fee Award Was Not Issued In Manifest Disregard Of the Law

Cross-Respondents claim that the fee award should be vacated because Cross-Respondents "presented the Panel with law demonstrating why it could not award fees for the full arbitration." Mot. at 13. But this merely reflects Cross-Respondents' disagreement with the Panel's determination, and is not the type of egregious impropriety required for vacatur. *See Fitzgerald*, 2008 U.S. Dist. LEXIS 45472, at *27–29 (declining to vacate attorneys' fee award because there was at least one basis on which the panel "may have" awarded fees).[17]

Nor have Cross-Respondents demonstrated any "partiality" (Mot. at 14) that would warrant vacatur. *See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, 272 F. App'x 174, 176 (3d Cir. 2008) (a party seeking vacatur based on

---

[17]   Cross-Respondents conclusory claim that they presented arguments to the Panel "demonstrating why it could not award fees" also mischaracterizes the relevant law of Arkansas and Missouri. *See supra* Section II.B.  Cross-Respondents reference three cases that they cited in their Post-Hearing Brief, which they suggest the Panel manifestly disregarded.  *See* Mot. at 13–14. However, these cases involved irrelevant grounds for attorneys' fees which the Panel did not invoke here and therefore do not show that the Panel manifestly disregarded the law.  *See Ameriprise*, 325 F. Supp. 3d at 230 (addressing whether fees may be awarded under Arkansas law when all parties have requested fees); *Borgschulte v. Bonnot*, 285 S.W.3d 345, 352 (Mo. Ct. App. 2009) (addressing whether fees may be awarded pursuant to contractual attorney fee provisions for related tort claims under Missouri law); *Env't Energy Partners*, 178 S.W.3d at 711 (same).

bias must show "evident partiality" which "requires proof of circumstances powerfully suggestive of bias"). There is not even a hint of partiality here. The Panel simply disagreed with Cross-Respondents' arguments, which is not evidence of partiality. To find otherwise would create grounds to overturn every arbitration award.

2.    <u>The Fee Award Does Not Violate Public</u>
<u>Policy</u>

Cross-Respondents contend that the fee award violates an Arkansas public policy against fee shifting[18] (Mot. at 14), but this is plainly wrong where – as Cross-Respondents acknowledge – Arkansas law expressly permits prevailing parties in breach of contract cases to recover fees. *See supra* § II.B. Indeed, as the Arkansas Supreme Court recognized in the only case Cross-Respondents cite for their argument, Arkansas "follows the American rule, which requires every litigant to bear his or her attorney's fees *absent statutory authority or a contractual agreement*" providing otherwise. *Carter v. Cline*, 430 S.W.3d 22, 26 (Ark. 2013) (emphasis added).[19]

---

[18]    Cross-Respondents also suggest that the fee award "violates longstanding dominant policy prohibiting such awards without statutory or contractual authorization." Mot. at 15. But the Award was rationally based on ample legal authority and does not violate public policy on these grounds either. *Supra* § II.B.

[19]    The only case Cross-Respondents cite where a court vacated an award for violating public policy is inapposite. Mot. at 15. In *Highlands Hospital &*

(Continued . . .)

III.    **THE ARBITRATOR SELECTION PROCESS DOES
         NOT SUPPORT VACATUR**

Cross-Respondents' request to vacate the Award based on the FINRA Director's disqualification of Mr. Parker is also without merit.  Mot. at 18–19.

Cross-Respondents' have identified no "deviation" from the FINRA arbitration selection process here.  At the time of Mr. Parker's disqualification, Cross-Respondents raised no objection and ultimately consented to the composition of the Panel.  When the Former Employees tried to delay the hearing months later based on Mr. Parker's disqualification, the FINRA Director confirmed that Mr. Parker's disqualification and Arbitrator Miller's appointment as a replacement comported with FINRA Rules and procedures.  Cross-Respondents offer nothing to the contrary.  Cross-Respondents also confirmed to the Panel when they argued their postponement motion that they did not object to the composition of the Panel, thereby waiving this argument.  *Id*;[20]  *see CPR Mgmt.*, 19 F.4th at 247 (a party cannot seek vacatur based on grounds that that party did not raise in the arbitration).

---

*Health Center v. American Federation of State County & Municipal Employees, District Council 84*, the court vacated a labor arbitration award for violating the public policy of ensuring that medical patients are free from abuse at hospitals.  *Highlands*, 1996 U.S. Dist. LEXIS 22652, at *4-5 (W.D. Pa. Feb. 16, 1996).

[20]   The single case Cross-Respondents cite does not help their cause.  *See* Mot. at 18 (citing *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668 (5th Cir. 2002)).  Unlike here, where FINRA followed standard procedure in disqualifying Mr. Parker and appointing Arbitrator Miller, in *Brook* the court found that "the AAA

(Continued . . .)

## IV.  THE PUNITIVE DAMAGES AWARD WAS PROPER AND SHOULD NOT BE VACATED UNDER THE *FUNCTUS OFFICIO* DOCTRINE

Cross-Respondents' contention that the Panel exceeded its authority by correcting the clear error in the Award's punitive damages figure is similarly wrong. Mot. at 19; ECF No. 2 ¶¶ 165–71.

While the *functus officio* doctrine generally precludes arbitrators from re-examining a decision after it has been issued in some circumstances, the doctrine does not prevent arbitrators from correcting a clerical error or computational mistake on the face of the award, as even Cross-Respondents admit.  Mot. at 19.  *See, e.g.*, *Sapp v. Indus. Action Servs., LLC*, 2022 U.S. Dist. LEXIS 94571, at *15–16 (D. Del. May 26, 2022) (finding that *functus officio* did not bar arbitrator's post-award e-mail clarifying the allocation of fees and costs); *Oakwood Labs v. Howrey Simon Arnold & White, LLP*, 2007 U.S. Dist. LEXIS 37909, at *7–8 (N.D. Ohio May 24, 2007).

Here, the Panel expressly acknowledged that the Award was issued "*solely to correct the amount of punitive damages* against Raymond James to the sum of $1,000,000.00."  Award at 4 (emphasis added).  The Award contained no other changes from the Initial Award.

---

flouted the prescribed procedures and ignored complaints from both sides about the irregular selection process."  *Id*. at 673.

The context also demonstrates the Initial Award's error in the punitive damages amount. As Cross-Respondents acknowledged in their Post-Hearing Brief to the Panel, punitive damages are generally awarded in proportion to compensatory damages. ECF No. 4-48 at 12. Thus, the Initial Award's punitive damages figure of $1,000 – a mere 0.0065% of the $15,300,000 compensatory damages award – was clearly a scrivener's error and would not serve its deterrent purpose for a large financial institution like RJFS.[21]

## V.   THE PANEL'S AWARD OF THE $500 FEE FOR FILING THE STATEMENT OF CLAIM IS NOT A BASIS FOR VACATUR

Cross-Respondents' claim that the Panel exceeded its authority by awarding reimbursement of WFA's $500 filing fee is also misplaced. Mot. at 20. The Parties' amenability to foregoing reimbursement of filing fees did not prohibit the Panel from granting such relief. *See* Ex. 7 (FINRA ARBITRATOR'S GUIDE) at 70 ("The panel has discretion to assess forum fees among the parties."); FINRA Rule 13904(e)(8) (noting that awards must include the "allocation of forum fees and any

---

[21]   RJFS is 100% owned by Raymond James Financial (ECF No. 6), which reported revenues of $2.83 billion in the fourth fiscal quarter of 2022 alone. *See* Press Release, Raymond James Financial Reports Fiscal Fourth Quarter and Fiscal 2022 Results (Oct. 26, 2022), https://www.raymondjames.com/-/media/rj/dotcom/files/our-company/news-and-media/2022-press-releases/rjf202210264q-earnings.pdf.

other fees allocable by the panel"). WFA also made clear that it sought "such other and further relief as the Panel may deem just and proper." ECF No. 4-15 at 36.

## VI.   THE AWARD SHOULD BE CONFIRMED

Because there is no valid basis to vacate the Award, it should be confirmed under Section 9 of the FAA and in accordance with the strong public policy favoring the arbitration and the finality and enforcement of arbitration awards. *See QAD, Inc.*, 2022 U.S. Dist. LEXIS 75409, at *5.

## VII.   THE COURT SHOULD AWARD COSTS TO WFA

In actions to compel a party to "abide by" an arbitration award, "fees are generally awarded if the defaulting party acted without justification" or "did not have a reasonable chance to prevail." *QAD, Inc.*, 2022 U.S. Dist. LEXIS 75409, at *10. Here, Cross-Respondents simply seek to relitigate the merits of the dispute and there is no basis to vacate the Award. Cross-Respondents have delayed and increased costs for WFA at every turn for nearly three years since WFA initiated the Arbitration, and Cross-Respondents' attempt to vacate the Award is more of the same. WFA is therefore entitled to its reasonable fees incurred in opposing Cross-Respondents' Petition to Vacate and in filing its Cross-Petition to Confirm. *See MarkDutchCo 1 B.V.*, 411 F. Supp. 3d at 329 (awarding fees to the award creditor because the opposing party "acted without a 'reasonable chance' of vacating the Award").

## <u>CONCLUSION</u>

For the foregoing reasons, WFA requests that the Court deny Petitioners' Motion to Vacate and grant WFA's Cross-Petition to Confirm the Award.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ John P. DiTomo*
John P. DiTomo (# 4850)
Courtney Kurz (#6841)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jditomo@morrisnichols.com
ckurz@morrisnichols.com

*Attorneys for Respondent*
*Wells Fargo Clearing Services, LLC*

OF COUNSEL:

David G. Hille *(pro hac vice to be submitted)*
Gregory M. Starner *(pro hac vice to be submitted)*
WHITE & CASE LLP
1221 New York, NY 10036-2787
(212) 819-8200

April 14, 2023

## <u>Certification Regarding Font and Word Count</u>

Counsel for Respondent/Cross-Petitioner WFA certifies that this filing complies with the type, font and word limitations set forth in the Court's November 10, 2022 Standing Order and the Amended Stipulation and Order Regarding Briefing Schedule and Word Limits, granted on April 13, 2023 (Dkt. No. 15).  The font is Times New Roman, 14-point, and the word count as provided by the word-processing system is 7,179 words.

*/s/ John P. DiTomo*
John P. DiTomo (# 4850)