IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KENT JACKSON RHOADES and
RAYMOND JAMES FINANCIAL
SERVICES, INC.,

            Plaintiffs,

          v.                       Civil Action No. 23-1262-CFC

WELLS FARGO ADVISORS, LLC,

            Defendant.

---

Geoffrey G. Grivner, BUCHANAN INGERSOLL & ROONEY PC, Wilmington, Delaware; Andrew J. Shapren, Scott C. Oberlander, BUCHANAN INGERSOLL & ROONEY PC, Philadelphia, Pennsylvania

       *Counsel for Plaintiffs*

John P. DiTomo, Courtney L. Kurz, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; David G. Hille, Gregory M. Starner, Erika Murdoch, WHITE & CASE LLP, New York, New York

       *Counsel for Defendant*

**<u>MEMORANDUM OPINION</u>**

June 11, 2024
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

I have two competing motions pending before me.  They both concern an award of approximately $20 million (the Award) issued by a Financial Industry Regulatory Authority (FINRA) arbitration panel last year.  Plaintiffs Kent Jackson Rhoades and Raymond James Financial Services, Inc. (Raymond James) have moved to vacate the Award.  D.I. 1.  Defendant Wells Fargo Advisors (Wells Fargo) has moved to confirm the Award.  D.I. 17.

## I.    BACKGROUND

Rhoades is a financial advisor.  He was employed in that capacity by Wells Fargo from 2008 to October 2018.  D.I. 2 ¶¶ 11–12, 31.  In October 2018, he and eleven colleagues at Wells Fargo's Mountain Home Branch in Arkansas resigned and formed an independent advisory firm affiliated with Raymond James.  D.I. 2 ¶ 31.  As a result of their departure, Wells Fargo closed its Mountain Home Branch.  D.I. 4-45 at 26.

Wells Fargo and Raymond James are members of FINRA, a government-authorized, self-regulatory organization that writes and enforces rules for broker-dealers.  D.I. 2 ¶ 3–4; *About FINRA: What We Do*, FINRA, https://www.finra.org/about/what-we-do [https://perma.cc/5GKY-7PZ7].  In August 2020, Wells Fargo initiated a FINRA arbitration against Raymond James, Rhoades, and the other

eleven individuals who left Wells Fargo with Rhoades to join Raymond James. D.I. 2 ¶ 40. Wells Fargo asserted nine claims in the arbitration: (1) unfair competition; (2) breach of contract; (3) breach of fiduciary duty; (4) aiding and abetting breach of fiduciary duty; (5) conspiracy; (6) tortious interference with business relationships; (7) tortious interference with contractual relations; (8) violation of FINRA Rules of Conduct; and (9) unjust enrichment. D.I. 4-15 at 23–35. Rhoades and the other former Wells Fargo employees filed an answer and a counterclaim for serial misconduct. *See* D.I. 4-7. In August 2022, Wells Fargo and all the former Wells Fargo employees except for Rhoades dismissed their claims against each other with prejudice. D.I. 2 ¶ 62.

Pursuant to FINRA procedures, the parties submitted their respective arbitrator rankings to FINRA on November 11, 2020. D.I. 2 ¶ 45. FINRA appointed a panel of three arbitrators on November 13, 2020. D.I. 2 ¶ 46. On July 2, 2021, Wells Fargo filed a motion to remove arbitrator James Parker from the panel based on tweets Wells Fargo found on Parker's Twitter account that Wells Fargo maintained "reveal a focus on issues of race and ethnicity that call into serious question whether his service as arbitrator will be free of racial or ethnic bias." D.I. 4-31 at 3–4. On July 20, 2020, FINRA notified the parties that it had received Wells Fargo's removal motion and that the motion was "moot" because "Parker is no longer serving on the panel for this matter." D.I. 4-34. On

2

July 23, 2021, FINRA informed the parties that Parker had been "removed from the arbitration panel" and that "[t]he replacement arbitrator is Julie Miller." D.I. 4-35 at 1. Six months later—on March 15, 2022—Plaintiffs wrote FINRA "to demand that FINRA provide an immediate explanation as to how FINRA['s] removal process was administered" with respect to Parker. D.I. 4-37 at 1. Plaintiffs stated in their letter to FINRA that their demand was prompted by news that a Georgia state court had vacated an arbitration award because FINRA had removed an arbitrator from a panel "in violation of both 9 U.S.C. § 10(a)(4) and FINRA's rule that arbitrators be removed only if the [removed arbitrator's] interest or bias was definite and capable of reasonable demonstration." D.I. 4-37 at 4 (internal quotation marks and footnote omitted). On March 22, 2022, FINRA responded to Plaintiffs' demand by letter. FINRA stated among other things in the letter that: (1) it never ruled on Wells Fargo's motion to remove as "Parker became disqualified from service on the panel for other reasons"; (2) "FINRA does not disclose to parties the reasons for arbitrator disqualifications and based on that policy, which is consistently applied in all cases, [it is] unable to provide additional information regarding the circumstances" of Parker's disqualification; (3) Parker's replacement, Miller, was the next highest ranked available person on the arbitrator list from which Parker had been chosen; and (4) FINRA was not aware of any

connection between Parker's replacement and the Georgia cases cited by Plaintiffs in their demand.  D.I. 4-38 at 1–2.

The same day (March 22, 2022) and again on March 24, 2022, Plaintiffs filed with FINRA an "emergency" request to postpone the arbitration.  D.I. 4-39.  The panel denied that request and, beginning on March 29, 2022, convened the merits hearing.  D.I. 4-41.  The hearing totaled 40 sessions spread over 21 days.  D.I. 16 ¶ 12.

The hearing concluded on January 6, 2023.  Wells Fargo's counsel stated at the end of his closing argument that day that Wells Fargo was "asking for our attorney's fees and costs in an amount to be determined by the panel based on what will be submitted in the post-hearing submissions."  D.I. 19-16 at 8.  Plaintiffs' counsel stated in his closing argument that "we didn't ask for our attorney's fees in our answer and counterclaims" and that "unless specifically authorized by law or statute—and, again we're not—the basis stated forth and set forth by Wells Fargo [] is simply wrong and inaccurate."  D.I. 19-16 at 9.  At the conclusion of closing arguments, the panel requested that the parties file post-hearing submissions that provided, among other things, the legal bases for Wells Fargo's request for attorney's fees.  D.I. 3 at 10–11.

Under FINRA's rules, unless all parties jointly request an "explained decision," the panel is not required to explain the rationale underlying the award it

issues. *See* FINRA RULE 12904.  In this case, the parties did not ask the panel to issue an explained decision.

On February 2, 2023, the panel issued the Award in favor of Wells Fargo.  As initially issued, the Award read in relevant part:

1. [Raymond James] and Rhoades are jointly and severally liable for and shall pay to [Wells Fargo] the sum of $15,300,000.00 in compensatory damages.

2. [Raymond James] and Rhoades are jointly and severally liable for and shall pay to [Wells Fargo] interest on the above-stated sum at the rate of 6% per annum from the date of the Award through and including the date the Award is paid in full.

3. Rhoades is liable for and shall pay to [Wells Fargo] the sum of $3,500,000.00 in attorneys' fees pursuant to contracts between [Wells Fargo] and Rhoades, Ark. Code Ann. § 16-22-308, and *Lucas Stucco & EIFS Design, LLC v. Landau*, 324 S.W.3d 444 (2010).

4. Rhoades is liable for and shall pay to [Wells Fargo] the sum of $847,000.00 in costs.

5. [Raymond James] is liable for and shall pay to Claimant the sum of $1,000.00 in punitive damages pursuant to *Holiday Inn Franchising, Inc. v. Hotel Associates, Inc.*, 2011 Ark. App. 147, ¶ 16 (Ct. App. 2011); *Allstate Ins.Co. v. Dodson*, 2011 Ark. 19, 25–27 (Ark. 2011); *McClellan v. Brown*, 276 Ark. 28 (Ark. 1982); and *Jim Ray Inc. v. Williams*, 99 Ark. App. 315 (Ark. 2007)

6. [Raymond James] and Rhoades are jointly and severally liable for and shall reimburse Claimant the sum of $500.00 for the non-refundable portion of the

5

claim-filing fee paid to FINRA Dispute Resolution Services.

7. Rhoades' Counterclaim is denied.

8. Any and all claims for relief not specifically addressed herein, are denied.

D.I. 4-1 at 4. Later that same day, the panel amended the Award to "correct the amount of punitive damages against [Raymond James] to the sum of $1,000,000.00." D.I. 4-2 at 4. In total, the panel awarded Wells Fargo $20,647,500.

## II.    LEGAL STANDARDS

A district court's "function in confirming or vacating a commercial [arbitration] award is severely limited." *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989) (alteration in original) (quoting *Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1130 (3d Cir. 1972)). "[T]o disturb an arbitrator's award a court must overcome a strong presumption in favor of the award." *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir. 1986). "This strict standard means that a reviewing court will decline to sustain an award 'only in the rarest case.'" *Id.* (citation omitted). Simply put, "[i]t's a steep climb to vacate an arbitration award." *France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022).

Plaintiffs seek vacatur of the Award under § 10(a)(3) and § 10(a)(4) of the Federal Arbitration Act (the FAA), 9 U.S.C. § 1 *et seq*.  D.I. 3 at 3.  A district court may vacate an arbitration award under § 10(a)(3) if "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced[.]"  9 U.S.C. § 10(a)(3).  The Third Circuit has cautioned that § 10(a)(3) "cannot be read [] to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award."  *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 557 (3d Cir. 2009) (quotation and citation omitted).  A district court can vacate an award under § 10(a)(3) for such failures only if the arbitrator's exclusion of evidence was made "in bad faith or so gross as to amount to affirmative misconduct."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987).

A district court may vacate an arbitration award under § 10(a)(4) of the FAA if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  A party seeking relief under this provision "bears a heavy burden."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).  Arbitrators "exceed[] their power" if they issue an "irrational" decision for which

7

there is "absolutely no support at all in the record justifying the arbitrator's determinations." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 295 (3d Cir. 2010), as amended (Dec. 7, 2010) (citations omitted).  As the Court held in *Sutter*:

> "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error."  Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand, regardless of a court's view of its (de)merits.  Only if "the arbitrator act[s] outside the scope of his contractually delegated authority"—issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract"—may a court overturn his determination.  So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

569 U.S. at 569 (alterations in original) (citations omitted).

## III. DISCUSSION

### A.  Plaintiffs' Motion to Vacate the Award

Plaintiffs argue that vacatur of some or all of the Award is warranted on six grounds.

### 1.  The Panel's Alleged Refusal to Hear Fee Evidence

Plaintiffs argue first that "the fee awards against Rhoades should be vacated under 9 U.S.C. § 10(a)(3) because the Panel engaged in misconduct by refusing to

hear any evidence regarding the basis for, or reasonableness of, the requested

fees." D.I. 3 at 3.  According to Plaintiffs:

> Although the Panel awarded $3,500,000 in attorneys'
> fees and $847,000 in expert fees, the Panel considered no
> evidence to support this award.  Wells Fargo did not raise
> its ultimate basis for seeking fees, nor its claimed fee
> amounts, until its Post-Hearing Brief submitted 18 days
> after the close of the evidentiary hearing.  In a complete
> about-face from its Pre-Hearing Brief, Wells Fargo
> claimed in its Post-Hearing Brief, in a single sentence,
> that it was entitled to fees under its breach of contract
> claim.  Wells Fargo attached an unsworn piece of paper
> simply listing the total attorneys' fees and total expert
> fees it allegedly incurred in the entire case (collectively,
> $4.347 million). Wells Fargo provided no evidence
> whatsoever regarding the work performed or whether the
> fees were paid, were related to its breach of contract
> claim or were reasonable. Further, despite a 20-day
> hearing with nearly 300 exhibits, there was no evidence
> on the record of the hours worked, by whom, what work
> was performed, or the rates charged.

D.I. 3 at 4 (citations omitted).

The panel, however, did not "refuse" to hear any evidence offered by

Plaintiffs with respect to fees, let alone engage in affirmative misconduct that

would permit vacatur of its fee award under § 10(a)(3).  Plaintiffs do not dispute

that the panel allowed the parties to argue the merits of an attorney's fees award in

post-hearing briefing.  *See* D.I. 3 at 3–6.  In fact, the panel's chairperson explicitly

included "attorney's fees" in a listing of the content the panel wanted to see in

post-hearing briefs.  *See* D.I. 19-16 at 10–11.  Furthermore, when Wells Fargo's

attorney suggested to the chairperson that post-trial briefing would "be limited to choice of law, *any bases for a request for attorney's fees* and the elements of the causes of action," the chairperson responded "Yes" and "You definitely are understanding." D.I. 19-16 at 10–11 (emphasis added).

In its post-hearing brief, Wells Fargo argued—albeit in conclusory fashion—that it was entitled to $3.5 million in attorney's fees and $847,000 in expert fees. *See* D.I. 4-47 at 15. Consistent with the chairperson's request, Wells Fargo provided a statutory basis for attorney's fees under the Arkansas code and cited case law from FINRA in support of its request. *See* D.I. 4-47 at 15.

Plaintiffs similarly cited statutory and case law in their post-hearing brief in support of their contention that attorney's fees were not warranted. *See* D.I. 4-48 at 12–15. In a footnote of their post-hearing brief, Plaintiffs wrote:

> The parties were not instructed to submit briefing on the amount of [Wells Fargo's] attorneys' fees or the reasonableness of such fees. To the extent that in its post-hearing brief [Wells Fago] submits an amount for attorneys' fees, [Plaintiffs] reserve all rights, and waive none, to object to, review, and rebut any such application.

D.I. 4-48 at 12 n.2. But having said that they "reserve[d] all rights" to rebut Wells Fargo's application for attorney's fees, Plaintiffs never requested in their post-hearing brief or in any other filing submitted to the panel an opportunity "to object to, review, or rebut" that application. And since Plaintiffs never asked the panel for that opportunity, the panel did not deny Plaintiffs the rebuttal rights they

purported to reserve in their post-hearing brief and cannot be said to have engaged in misconduct by failing to consider rebuttal argument or evidence with respect to Wells Fargo's fee application.  For that reason, there is no basis to vacate the fee award under § 10(a)(3).  *See United Paperworkers Int'l Union*, 484 U.S. at 40. But in any event, Plaintiffs' failure to seek from the arbitrators the opportunity to submit rebuttal argument and evidence and their failure to object to the panel's consideration of Wells Fargo's fee evidence without an opportunity to present rebuttal evidence waived their right to seek the vacatur of the fee award based on the panel's failure to entertain such argument and evidence.  *See Goldman, Sachs, & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 150 (3d Cir. 2015).  As the Court held in *Goldman, Sachs*, "[a] party should not be permitted to game the system by rolling the dice on whether to raise the challenge during [arbitration] proceedings or wait until it loses to seek vacatur on the issue."  *Id.*

## 2.    Authority of the Panel to Award Fees

Plaintiffs next argue that "the Panel exceeded its authority in rendering its fee award" and that therefore vacatur of the fee award is required under § 10(a)(4). D.I. 3 at 6.  According to Plaintiffs, "the only basis for fee shifting was two agreements between Rhoades and Wells Fargo" and "the Panel effectively rewrote the applicable agreements and violated the very laws it cited in its Award by massively expanding the scope of their fee-shifting provisions to award fees

against Rhoades individually *for the entire arbitration*." D.I. 3 at 7 (emphasis in original). Wells Fargo, however, accused Plaintiffs of breaching not only the two agreements identified by Plaintiffs—a promissory note and a succession agreement—but also certain duties owed to Wells Fargo that were codified in Wells Fargo's employee handbook. D.I. 4-47 at 3–5.

The parties agree that the promissory note and the succession agreement are governed by Missouri law and that the breach claim associated with the employee handbook is governed by Arkansas law. *See* D.I. 18 at 20 n.9; D.I. 23 at 12–13. The panel found Rhoades "liable for and [required him to] pay to [Wells Fargo] the sum of $3,500,000.00 in attorneys' fees pursuant to contracts between [Wells Fargo] and Rhoades, Ark. Code Ann. § 16-22-308, and *Lucas Stucco & EIFS Design, LLC v. Landau*, 324 S.W.3d 444 ([Mo.] 2010)." D.I. 4-1 at 4. Section 16-22-308 of the Arkansas Code provides that the prevailing party in certain civil actions, including for breach of contract, "may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs." Ark. Code Ann. § 16-22-308. In *Lucas Stucco*, the Missouri Supreme Court held as a matter of first impression that a contractor sufficiently pleaded a request for attorney's fees in a breach of contract claim brought under Missouri's Private Prompt Payment Act, even though the contractor did not specifically make reference to the Act. 324 S.W.3d at 445–46. The panel's citation of section 16-22-308 and *Lucas Stucco*

12

makes clear that it determined that Rhoades breached his contractual obligations under the employee handbook (governed by Arkansas law) *and* that he breached his contractual obligations under the promissory note, the succession agreement, or both (governed by Missouri law).

Plaintiffs do not dispute that the parties agreed to arbitrate Wells Fargo's claims or that the panel was empowered to award attorney's fees. *See* D.I. 3 at 6–12. Nor do they dispute that the panel based its fee award on its interpretation of Arkansas and Missouri law, the Wells Fargo employee handbook, the promissory note, and the succession agreement. *See* D.I. 3 at 6–12. They dispute instead the merits of the panel's interpretation of that law and those materials. In Plaintiffs' words: "The Panel, knowing that it needed a legal basis to award fees, cited 'contracts between [Wells Fargo] and Rhoades' and 'Ark[.] Code Ann. § 16-22-308, and *Lucas Stucco & EIFS Design LLC v. Landau*, 324 S.W[.]3d 44 ([Mo.] 2010),' which state that attorneys' fees may be awarded when authorized by contract or statute. However, no statute authorized the fee award, and . . . the contracts at issue cannot possibly be the basis for the Panel's fee award." D.I. 3 at 7. Under *Sutter*, however, the dispositive question is whether the panel "(even arguably) interpreted" Arkansas and Missouri law, the employee handbook, promissory note, and succession agreement; the question is not whether the panel correctly interpreted that law or those materials correctly. 569 U.S. at 569. As the

13

Court stated in *Sutter*, a party seeking to vacate an arbitration award under § 10(a)(4) cannot meet its "heavy burden" by showing that the arbitrator committed an error even if that error was serious.

Plaintiffs attempt to circumvent *Sutter* by arguing that the panel's fee award is "completely irrational." "The 'irrationality' standard comes from [§ 10(a)(4)'s] 'exceeded their powers' provision." *Ario*, 618 F.3d at 295. Applying this standard, courts "review the form of the relief awarded by the arbitrators to determine if the form of the arbitrators' award can be rationally derived either from the agreement between the parties or from the parties' submissions to the arbitrators, and [the court] do[es] not revise the terms of the award unless they are completely irrational." *Id.* (internal quotation marks, original alterations, and citation omitted). In this case, Wells Fargo argued before the panel that an award of fees was warranted under, among other things, section 16-22-308 of the Arkansas Code, and it submitted to the panel an (albeit unsworn) declaration from its attorneys that Wells Fargo's fees totaled $4.347 million. As noted above, section 16-22-308 expressly allows for an award of fees to the prevailing party in certain civil actions, including for breach of contract. Accordingly, the panel's award of $4.347 million in fees was not completely irrational.

Plaintiffs argue that the panel's fee award violates section 16-22-308 because Wells Fargo's asserted tort claims and the arbitration was not based

14

primarily in contract.  D.I. 3 at 9.  But even assuming that section 16-22-308 allows for a fee award only if the action in question was based primarily in contract, Wells Fargo's contract claims were inextricably intertwined with its other claims, all of which arose from Rhoades and his colleagues leaving Wells Fargo for Raymond James.  The fact that the claims were so intertwined precludes a finding that a conclusion by the panel that the action sounded primarily in contract would have been completely irrational.

Finally, citing the Arkansas Supreme Court's decision in *Carter v. Cline*, 430 S.W.3d 22 (Ark. 2013), Plaintiffs argue that the panel's fee award violates Arkansas public policy because Arkansas follows the American Rule, which Plaintiffs say requires litigants to bear the cost of their own attorney's fees.  D.I. 3 at 15.  But the Court held in *Carter* that Arkansas "follows the American rule, which requires every litigant to bear his or her attorney's fees *absent statutory authority or a contractual agreement between the parties*," *id.* (emphasis added), and, as noted above, section 16-22-308 provides statutory authority for a fee award in this action.

For these reasons, § 10(a)(4) does not provide a basis to vacate the panel's fee award.

### 3.    Compensatory Damages Award

Plaintiffs next argue that the panel's compensatory damages award was "completely irrational, violates public policy, and was issued in manifest disregard of the law," and therefore should be vacated under § 10(a)(4).  D.I. 3 at 15.  The thrust of Plaintiffs' argument is that the panel's compensatory damages award was based solely on the testimony of Wells Fargo's damages expert, and that any reliance on that testimony was misguided for various reasons, including, for example, that the expert's "calculations assumed that [Wells Fargo] should be compensated in the amount of the purported value of the entire Mountain Home branch office as if [Plaintiffs] were acquiring a company."  D.I. 3 at 16.  Third Circuit law, however, makes clear that "[i]t is not proper for a reviewing court to 'reexamine the evidence' when reviewing an arbitration award, and errors in factfinding do not justify reversal," *Egan Jones Ratings Co. v. Pruette*, 765 F. App'x 659, 662 (3d Cir. 2019) (citations omitted).  Accordingly, the various alleged shortcomings and errors of Wells Fargo's expert identified by Plaintiffs in their briefing cannot justify vacatur of the panel's compensatory damages award.

Plaintiffs also complain that the panel's compensatory damages award "leads to the irrational result that [Rhoades] had only three choices: 1) stay with [Wells Fargo] as an indentured servant for the rest of his career; 2) leave [Wells Fargo] without his team, thereby destroying his partnerships and the manner in

16

which the team had serviced clients for years; or 3) leave with the team but pay [Wells Fargo] an outrageous $15.3 million ransom." D.I. 3 at 17. Plaintiffs argue—without citing to any legal authority—that "[t]he law and public policy mandate that no at-will employee should be forced into such a quandary." D.I. 3 at 17.

As an initial matter, "irrational" circumstances that might result from the issuance of an award do not provide a basis to vacate an award, *see Verizon Pennsylvania, LLC v. Commc'ns Workers of Am., AFL-CIO, Loc. 13000*, 13 F.4th 300, 306 (3d Cir. 2021); but more to the point, as Wells Fargo argued in the arbitration and the panel implicitly concluded, while Rhoades was free to leave Wells Fargo, he was not free to breach his contractual and fiduciary obligations to Wells Fargo by coordinating the departure of the entire Mountain View branch he was charged with running to join a Wells Fargo competitor.

Plaintiffs also argue that the award "manifestly disregarded the law" because it "ignores" FINRA's Protocol for Broker Recruiting, which, Plaintiffs say, "permitted" Rhoades and his colleagues "to take certain client information and solicit the clients they serviced at [Wells Fargo] upon moving to [Raymond James], regardless of any non-solicitation agreements they had with [Wells Fargo]. D.I. 3 at 1, 16. Wells Fargo's arguments and evidentiary submissions, however,

17

provided the panel a sufficient basis to conclude that the protocol did not bar Wells

Fargo's claims. *See, e.g.,* D.I. 4-45 at 6–7, 45–46; D.I. 19-16 at 4–5.

Finally, citing *Smith v. Am. Greetings Corp.*, 804 S.W.2d 683 (Ark. 1991)

and *Stubblefield v. Siloam Springs Newspapers, Inc.*, 590 F. Supp. 1032 (W.D.

Ark. 1984), Plaintiffs argue that the panel's compensatory damages award violates

Arkansas public policy because it effectively subjected Rhoades and his colleagues

to a de facto noncompete obligation.  D.I. 3 at 16.  But although courts can refuse

to enforce arbitration decisions that violate public policy, "[t]his limited exception

to the usual deference given an arbitration award is only available when the

arbitration decision and award create an explicit conflict with an explicit public

policy that is 'well defined and dominant and [can be] ascertained by reference to

the laws and legal precedents and not from general considerations of supposed

public interests.'" *Serv. Emps. Int'l Union Loc. 36, AFL-CIO v. City Cleaning Co.*,

982 F.2d 89, 92 (3d Cir. 1992) (alteration in original) (citing *W.R. Grace & Co. v.*

*Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*

*of Am.*, 461 U.S. 757, 766 (1983)).  And, here, neither *Smith* nor *Stubblefield*

recognizes or establishes an explicit, well-defined, or dominant policy that trumps

Wells Fargo's right to recover damages for its tort and contract claims.

For these reasons, Plaintiffs have failed to meet their heavy burden to establish that vacatur of the panel's compensatory damages award is warranted under § 10(a)(4).

### 4.    Arbitrator Selection Process

Plaintiffs next argue that the award should be vacated in its entirety because FINRA departed from its mandated arbitrator selection process. D.I. 3 at 18.  In Plaintiffs' words:

> FINRA deviated from its arbitrator selection process by removing the public arbitrator, James Parker [], who served as arbitrator for eight months before Wells Fargo filed a motion to remove him with vague allegations of bias premised on Parker's Twitter activity unrelated to the arbitration.  Although FINRA Rule 13410 mandates that, to remove an arbitrator, the FINRA Director must find that the interest or bias be "definite and capable of reasonable demonstration, rather than remote or speculative," the Director never made such a finding. Instead, FINRA provided the parties with conflicting reasons for Parker's removal from the Panel.  FINRA's failure to adhere to its own process led to a motion to adjourn the evidentiary hearing, which was unreasonably denied by the Panel.  Such process failures mandate vacatur of the entire award.

D.I. 3 at 18–19 (citations omitted).

This argument fails because Parker was not removed pursuant to FINRA Rule 13410 but instead was disqualified from service as an arbitrator for reasons unrelated to the allegations Wells Fargo made in its motion for his removal. *See* D.I. 4-38 at 2 ("[T]he Director did not rule on the Motion.  Arbitrator Parker

became disqualified from service on the panel for other reasons."). FINRA Rule 13410 applies to the removal of an arbitrator for conflicts of interest and bias. Wells Fargo's motion was made pursuant to FINRA 13410, *see* D.I. 4-31 at 1, but FINRA never ruled on the motion because it was rendered moot by Parker's disqualification. So, any alleged failure by FINRA to comply with FINRA Rule 13410 is of no moment. The argument fails for the additional reason that Plaintiffs have not demonstrated any prejudice they suffered from Parker's replacement by Miller on the panel. *See* D.I. 3 at 18–19; D.I. 23 at 28.

### 5.    Punitive Damages Award

Plaintiffs next argue that the panel's punitive damages award should be vacated under § 10(a)(4) because "[t]he Panel exceeded its authority under the *functus officio* doctrine by amending its punitive damages award against Raymond James from $1,000 to $1,000,000 after issuing its award." D.I. 3 at 19. Under the *functus officio* doctrine, "once the arbitrator decides an issue, [he is] prohibit[ed] from revising that decision without the parties' consent. He can decide other issues submitted by the parties, correct clerical errors, and even clarify his initial decision—but nothing more." *Verizon Pennsylvania*, 13 F.4th at 303.

In this case, it is clear that the Award was amended to correct a clerical error. As initially issued, the Award stated that the punitive damages award was $1,000—a trivial sum relative to the panel's compensatory award. *See* D.I. 4-1

20

at 4.  By its express terms, the Award was issued "solely to correct the amount of punitive damages against Raymond James to the sum of $1,000,000.00."  D.I. 4-2 at 4.  Common sense makes clear that the panel amended the Award to correct a clerical error.  An award of $1,000 in this case would have been a nominal award that would not deter others from engaging in the conduct that gave rise to compensatory damages in this case or satisfy any other purpose of a punitive damages award.  Accordingly, I will deny Plaintiffs' request to vacate the punitive damages award under § 10(a)(4).

### 6.    Claim-Filing Fee

Lastly, Plaintiffs argue that the panel exceeded its authority by ordering Plaintiffs to reimburse Wells Fargo for its $500 claim-filing fee and that, as a result, the entire award (totaling more than $20 million) should be vacated due to the panel's partiality.  D.I. 3 at 20.  Plaintiffs are correct that the parties agreed not to ask for reimbursement of fee filings from the other side.  *See* D.I. 4-46 at 8.  But the panel was not required to abide by the parties' verbal agreement, and the FINRA Dispute Resolution Services Arbitrator's Guide gives arbitrators discretion over allocating forum fees.  *See* D.I. 19-7 at 70 ("The panel has the discretion to assess forum fees among the parties.").  The factors a FINRA panel may consider in allocating fees include "actions by any party that may have prolonged the length of the hearing; the legitimacy of arguments made or positions taken; disruptions or

time delays caused during hearing sessions; and the ultimate merits of the case (i.e., who prevailed or substantially prevailed)." D.I. 19-7 at 70. The Guide does not include as a factor whether parties have agreed to a fee waiver. *See* D.I. 19-7 at 70. Accordingly, I will deny Plaintiffs' request to vacate the claim-filing fee or the entire award based on the panel's decision to order Plaintiffs to reimburse Wells Fargo's claim-filing fee.

### B.    Wells Fargo's Motion to Confirm the Award

Having determined that Plaintiffs have failed to establish a basis to vacate the Award, I will grant Wells Fargo's motion to confirm the Award. *See* D.I. 17. I will, however, decline Wells Fargo's request in its briefing (but not its motion) to award it reasonable fees incurred in opposing Plaintiffs' motion. *See* D.I. 18 at 30; D.I. 17. "In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification, or if the party resisting arbitration did not have a 'reasonable chance to prevail.'" *Chauffeurs, Teamsters & Helpers, Loc. Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir. 1980) (internal citations omitted). Although many of Plaintiffs' arguments border on frivolous, I do not believe that all their arguments were made without justification and therefore conclude that an award of fees is not called for in this case.

## IV.    CONCLUSION

For the foregoing reasons, I will deny Plaintiffs' Motion to Vacate

Arbitration Award (D.I. 1) and grant Wells Fargo's Motion to Confirm Arbitration

Award (D.I. 17).

The Court will issue an order consistent with this Memorandum Opinion.